UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH MCCARTHY                                                    PLAINTIFF

v.                                              CIVIL CASE NO. 3:13cv924-DPJ-FKB

SHERIFF TOMMY WADDELL; NESHOBA
COUNTY, MISSISSIPPI; and JOHN DOES 1-10                    DEFENDANTS

ORDER

This § 1983 action is before the Court on Sheriff Tommy Waddell's Motion for Summary

Judgment Premised on Immunity [11].  Having considered the memoranda and submissions of

the parties, the Court finds that the motion should be denied in part and granted in part.

I.      Facts and Procedural History

This case stems from a police pursuit that occurred on February 21, 2012.  That night,

Cruise Petty and Plaintiff Joseph McCarthy were with Bridgett King, Petty's girlfriend, at her

grandmother's house.  King's grandmother, Linda Sanders, ordered Petty and McCarthy out of

the house, but Petty snuck back into King's bedroom.  Sanders caught him and again chased him

out of the house.  Petty and McCarthy then jumped into Sanders's car and drove off.  Petty was

driving.

Around 10:24 p.m., Linda Sanders called the Neshoba County Sheriff's Department to

report a breaking-and-entering and a stolen vehicle.  Deputy Spears responded to the call and

initiated a pursuit of Sanders's vehicle.  There is no dispute that Petty refused to pull over and a

chase ensued.  Sheriff Tommy Waddell responded in his patrol car to provide back-up and

support.  According to Defendants, Petty and McCarthy rammed one patrol car, traveled at a high

speed without headlights, swerved into oncoming traffic, and drove on the front right rim

because they were missing a tire.  After all this, Waddell ordered Spears to ram Petty and McCarthy's vehicle off the highway.  The vehicle flipped and landed on the side of the road.

Waddell and deputies approached the vehicle while commanding the occupants to show their hands.  McCarthy claims that he was seated in the vehicle with his hands up.  Waddell had his service weapon in hand as he approached the passenger side and reached through the passenger-side window, at which time his service weapon fired, hitting McCarthy.

McCarthy sued Waddell and Neshoba County under § 1983 alleging excessive force in violation of the Fourth, Fifth, and Eighth Amendments, incorporated through the Fourteenth Amendment, though he has now dropped the Fifth and Eighth Amendment claims.  He also states claims against Neshoba County under the Mississippi Tort Claims Act (MTCA).[1] McCarthy filed the instant motion for summary judgment on all claims against him based on immunity.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] McCarthy clarifies that his MTCA claims are brought only against Neshoba County and not against Waddell.  Pl.'s Resp. [19] at 2.

2

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

    A.     Qualified Immunity Standard

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hamptom v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). In the summary-judgment posture the Court "'looks to the evidence before it (in the light most favorable to the plaintiff).'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id.* (citations omitted). Whether the official acted with objective reasonableness is an issue of law reserved for the Court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In particular, *Pearson* observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237.

B.      Application to Sheriff Waddell

To avoid qualified immunity on his Fourth Amendment excessive-force claim, McCarthy

must show that he suffered "(1) an injury that (2) resulted directly and only from the use of force

that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores*

*v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*,

202 F.3d 730, 740 (5th Cir. 2000)).  McCarthy's complaint alleges two instances of excessive

force—(1) Waddell's ordering his deputy to run the car off the road and (2) Waddell's shooting

McCarthy.

1.      Forcing the Vehicle Off the Road

First, McCarthy claims that forcing the car off the road constituted excessive force.

Waddell argues that the move was necessary to prevent a risk of serious injury or death to other

motorists.  The undisputed evidence is that Petty and McCarthy were driving erratically in the

wrong lane of traffic without headlights and putting other motorists on the highway at risk.  *See,*

*e.g.*, Def.'s Mot. [11] Ex. C, Waddell Aff. at 2.

McCarthy attempts to diminish this risk by arguing that had the deputies ceased their

pursuit and sought Petty and McCarthy at a later time, the dangerous driving would have also

ceased.  But as Waddell points out in reply, that argument is purely speculative.  Had the pursuit

been terminated, Petty and McCarthy could have continued to drive erratically without headlights

on the front right tire rim, still putting other motorists in danger.  *Cf. Scott v. Harris*, 550 U.S.

372, 385 (2007) ("Whereas . . . ramming respondent off the road [ ] was certain to eliminate the

risk that respondent posed to the public, ceasing pursuit was not. . . . [R]espondent might have

been just as likely to respond by continuing to drive recklessly.").

5

McCarthy also makes much of a Neshoba County policy under which "[p]ursuits may be terminated if the suspect's identity has been determined; immediate apprehension is not necessary to protect the public or officers; and apprehension at a later time is reasonably feasible."   Pl.'s Mem. Resp. [20] Ex. F, Neshoba Cnty. Sheriff's Dep't Policies and Procedures. First, that policy is clearly discretionary as it uses the term "may."   Second, the undisputed facts indicate that Waddell could have believed immediate apprehension was necessary to protect the public given Petty's dangerous driving.   Third, even if Waddell violated county policy, that does not establish a violation of federal law as required by § 1983.   *See Harris v. Payne*, 254 F. App'x 410, 416–17 (5th Cir. 2007) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992)).   Waddell's belief that Petty and McCarthy needed to be stopped to prevent serious injury to others on the road was objectively reasonable.   Waddell is therefore entitled to qualified immunity as to McCarthy's claim based on the car being run off the road.[2]

2.      Shooting

McCarthy alleges that Waddell also used excessive force when he shot McCarthy. Waddell argues that his gun accidentally discharged and negligence cannot form the basis for a claim under § 1983.   "Fourth Amendment violations occur only through intentional conduct." *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013) (citing *Brower v. Cnty. of Inyo,* 489 U.S. 593, 597 (1989)) (other citations omitted).   In this case, there is a question of fact as to whether Waddell's gun accidentally discharged or whether he intentionally pulled the trigger.

---

[2] McCarthy argues that reasonableness under the Fourth Amendment is a question for the jury.  But the issue here is whether Waddell acted with objective reasonableness for purposes of qualified immunity, which is a question of law for the Court.  *Williams*, 180 F.3d at 703.

McCarthy argues that Waddell intentionally shot him.  He points to evidence indicating that the gun did not malfunction, *see* Pl.'s Mem. Resp. [20] Ex. C, Waddell Dep. at 69, and the lack of other explanation as to why the gun fired, *see id.* at 78.  Waddell counters that the shooting was an accident and notes that the area where it occurred consisted of a slight hillside with uneven soil and gravel, but he is still unsure about why his weapon discharged.  Def.'s Mem. [12] at 10.  He also points to the fact that Waddell and his deputies were unsure who had fired right after it happened.  Def.'s Mot. [11] Ex. A, MBI Report at 3.

These competing facts must be viewed in a light most favorable to the nonmoving party—McCarthy. *Little*, 37 F.3d at 1075.  If a jury accepts McCarthy's version of the facts as true, then it could conclude that the force used was unnecessary and not objectively reasonable.  Given this question of fact as to Waddell's intent, his motion for summary judgment on the excessive-force claim based on the shooting is denied.  *See, e.g.*, *Santibanes v. City of Tomball, Tex.*, 654 F. Supp. 2d 593, 604–05 (S.D. Tex. 2009) (denying summary judgment because there was an issue of fact as to whether the defendant officer discharged his weapon intentionally).

IV.     Conclusion

The Court has considered all the arguments.  Those not specifically addressed would not change the result.  As to McCarthy's claims based on Waddell's order to force the vehicle off the road and Waddell's approaching the vehicle with an unholstered gun, Waddell is entitled to qualified immunity and his motion [11] is granted.  Because there is a question of fact as to Waddell's intent in shooting McCarthy, summary judgment is denied as to the excessive force claim based on the shooting.

**SO ORDERED AND ADJUDGED** this the 17th day of April, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE