IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH MCCARTHY                                                        PLAINTIFF


VS.                                    CIVIL ACTION NO. 3:13-cv-924-DPJ-FKB

SHERIFF TOMMY WADDELL, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS SHERIFF
OF NESHOBA COUNTY, MISSISSIPPI; NESHOBA
COUNTY, MISSISSIPPI; AND JOHN DOES 1-100                                DEFENDANTS

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Tommy Waddell and Neshoba County, Mississippi, by and

through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and file this their

Memorandum of Authorities in support of their Motion for Summary Judgment, as follows:

## INTRODUCTION AND PROCEDURAL HISTORY

This civil action stems from a police pursuit of a stolen vehicle on February 21, 2012, in

Neshoba County, Mississippi. The pursuit resulted in officers forcing the stolen vehicle – driven by

Cruise Petty and occupied by Plaintiff Joseph McCarthy – off the roadway. As officers were

attempting to apprehend the suspects once the vehicle came to a stop, Sheriff Tommy Waddell's

service weapon accidentally fired, striking McCarthy in the right side of his neck and resulting in

personal injuries.

On April 25, 2013, McCarthy filed suit against both Sheriff Waddell and Neshoba County

under 42 U.S.C. § 1983, alleging excessive force in violation of his constitutional rights under the

Fourth Amendment, based on (1) Sheriff Waddell ordering his deputies to force Plaintiff's vehicle

off the roadway to terminate the pursuit, and (2) Plaintiff being struck by the bullet fired by Sheriff

Waddell's service weapon. *Id.*, at ¶ 20. Plaintiff further alleges Neshoba County was deliberately indifferent in its failure to train or supervise its officers, and that it had a policy or custom of sanctioning the use of excessive force in effectuating arrests and in failing to adequately train its officers regarding the use of force. *Id.*, at ¶ 21-24. Plaintiff alternatively asserts a state law claim against Neshoba County under the Mississippi Tort Claims Act (MTCA) strictly for the shooting incident, claiming Sheriff Waddell acted with reckless disregard when he fired his service weapon while attempting to apprehend Plaintiff. *Id.*, at ¶¶ 28-29.

Sheriff Waddell, in his individual capacity, previously sought summary judgment as to all claims against him premised on the doctrine of qualified immunity. *See* Motion for Summary Judgment, Memorandum, and Rebuttal, [Docs. 11, 12, 22]. The Court held Sheriff Waddell is entitled to qualified immunity as to Plaintiff's claims against him regarding the pursuit and forcing the stolen vehicle off the roadway, finding that Waddell's belief that Petty and McCarthy needed to be stopped to prevent serious injury to other motorists was objectively reasonable. *See* Order, [Doc. 23], at 6. The Court further held that Sheriff Waddell has qualified immunity from Plaintiff's claims against him based on approaching the stolen vehicle with an unholstered gun. *Id.*, at 7. However, the Court found there was "a question of fact as to whether Sheriff Waddell's gun accidentally discharged or whether he intentionally pulled the trigger." *Id.*, at 6.

Thus, the only claims that remain pending in this case are (1) Plaintiff's Fourth Amendment excessive force claim against Sheriff Waddell regarding the firing of his service weapon; (2) Plaintiff's Fourth Amendment claims against Neshoba County; and (3) Plaintiff's alternative claim under the MTCA against Neshoba County regarding the shooting incident.

Following the Court's prior ruling on Sheriff Waddell's qualified immunity motion, the parties engaged in additional discovery, including the deposition of Plaintiff and expert discovery.

Based on the evidence now before the Court, viewed in a light most favorable to Plaintiff, there are no genuine issues of material fact, and Defendants are entitled to summary judgment as to all of Plaintiff's remaining claims against them.

## FACTS AND BACKGROUND

At about 10:24 p.m. on February 21, 2012, Linda Sanders called 911 to report a breaking-and-entering at her residence and a stolen vehicle. Plaintiff and his cousin, Cruise Petty, had been at Sanders' house earlier that day with her granddaughter, Bridgett King, who was Petty's girlfriend. Sanders caught Petty and McCarthy and ordered them out of her house, but Petty snuck back into King's bedroom that night. When Sanders caught Petty again, she chased him out of the house. Petty and McCarthy then jumped into Sanders' car and drove off, with Petty driving.[1] The Court previously summarized the ensuing police pursuit, as follows:

> Deputy Spears responded to the call and initiated a pursuit of Sanders's vehicle. There is no dispute that Petty refused to pull over and a chase ensued. Sheriff Tommy Waddell responded in his patrol car to provide back-up and support. According to Defendants, Petty and McCarthy rammed one patrol car, traveled at a high speed without headlights, swerved into oncoming traffic, and drove on the right front rim because they were missing a tire.[2] After all this, Waddell ordered Spears to ram Petty and McCarthy's vehicle off the highway. The vehicle flipped and landed on the side of the

---

[1] Both Petty and McCarthy later pled guilty to stealing a motor vehicle, a felony offense. *See* Petty Judgment, [Doc. 11-4]; McCarthy Judgment, [Doc. 11-5]. McCarthy was sentenced to three years in prison with all three years suspended, three years of probation, and a fine. *See* [Doc. 11-5].

[2] McCarthy confirmed during his deposition that as they fled from officers in the stolen vehicle, they traveled at a high rate of speed sometimes exceeding 100 miles per hour, that they had a blown tire, that Petty had trouble maintaining control of the vehicle, that other vehicles had to pull off the road to get out of their way, and that Petty struck one of the patrol cars involved in the pursuit from behind. *See* McCarthy Dep., Exh. "A," at 40:11-45:18.

road.

*See* Order, Doc. [23].

When the stolen vehicle came to a stop, Sheriff Waddell exited his patrol car with his service weapon, a Glock .40-caliber, in hand. *See* Waddell Deposition, Exh. "B," at 57. Sheriff Waddell and deputies Colby Clay, Brad Winstead, and Johnathan Spears all quickly approached the vehicle and gave loud, verbal commands for both suspects to show their hands. *Id.* Sheriff Waddell approached the passenger side of the suspects' vehicle as Deputy Clay went to the driver's door. *Id.* The passenger window of the stolen vehicle apparently had been broken out during the crash. *Id.* Plaintiff testified that he heard the officers yelling as they approached the vehicle, but he could not understand what they were saying because he was "still shaken up" from the crash. *See* McCarthy Dep., at 52. Although Plaintiff has testified that he was seated in the passenger seat with his hands up when the officers reached the vehicle, every officer at the scene has testified they never saw Plaintiff raise his hands despite being verbally commanded to do so. *See* Waddell Dep., Exh. "B," at 57; Spears Dep., Exh. "C," at 22; Clay Dep., Exh. "D," at 21-22; Winstead Dep., Exh. "E," at 16.

It is undisputed that Petty failed to raise his hands despite the verbal commands from the officers. *See* Waddell Dep., at 57. Deputy Clay, who was the first officer to reach the driver's side of the vehicle, testified that Petty was leaned forward over the middle console with his hands near the floorboard and out of sight. *See* Clay Dep., at 21. Clay testified: "I couldn't even see his hands. I didn't know if there was something in the floorboard, a weapon in the floorboard that he could have been reaching for." *Id.*, at 21-22. *See also* McCarthy Dep., at 50-51 (confirming Petty was leaned over the middle of the front seat without his hands raised when the officers reached the vehicle).

When Sheriff Waddell reached the vehicle, he reached through the passenger window with

-4-

his free right hand to apprehend Plaintiff while holding his service weapon in his dominant left hand. *See* Waddell Dep., at 66-67. Waddell testified that as he reached through the window to try to take control of Plaintiff, he heard what sounded like a gunshot. *Id*., at 57. At first, he did not know whose weapon had fired, and he asked the other officers, "Who shot?" *Id*., at 57-58. Deputies Clay, Spears, and Winstead also all testified that initially no one knew whose gun had fired and that Sheriff Waddell's immediate reaction was asking them, "Who shot?" *See* Spears Dep., at 28-29; Clay Dep., at 29-30; Winstead Dep., at 9-10. After the officers checked their weapons, it ultimately was determined that the shot had come from Sheriff Waddell's gun. *See* Winstead Dep., at 30. It was only a "matter of a very few seconds" between the time the stolen vehicle came to a stop and the time the gun accidentally fired. *Id*., at 57.

Plaintiff testified he never saw Sheriff Waddell's gun before it went off and never heard the gunshot. *See* McCarthy Dep., at 53-54. In fact, Plaintiff initially thought he had been tased. *Id*., at 52-53. Consistent with the testimony of Sheriff Waddell and each of the deputies who were present at the time of the incident, Plaintiff testified that all of the officers initially were confused as to where the shot had come from and whether anyone had been hit. *Id*., at 54-55. It is undisputed that Sheriff Waddell initially had no idea it was his gun that had fired or that the bullet had struck Plaintiff. *Id*.

Neither Sheriff Waddell nor the other officers initially knew whether anyone had been hit by the gunshot. *See* Waddell Dep., at 58, 62. At first, Sheriff Waddell thought Petty might have been hit because he was laying across the front seat and unresponsive, while Plaintiff was still sitting in the passenger seat upright. *Id*., at 58, 62-63. Plaintiff testified it took several minutes for officers to realize that he had been hit by the shot, and he was unable to verbally let them know he had been

struck.  *See* McCarthy Dep., at 53, 55.  Eventually, one of the deputies noticed Plaintiff was bleeding in the neck/right shoulder area, and they realized he had been shot.  *See* Waddell Dep., at 58.  At that point, Plaintiff was provided with medical attention until paramedics arrived.  *Id*.

Sheriff Waddell never intended to fire his service weapon, much less shoot Plaintiff.  *See* Waddell Dep., at 62, 66-67, 69-70.  He has no idea why his gun went off.  *Id*, at 66-67, 78.  He testified that he thought his hand was <u>off the trigger</u> as he reached into the vehicle to apprehend Plaintiff.  *Id*., at 66-67.  He does not recall ever pulling the trigger, though he cannot rule out that he may have inadvertently done so without knowing it.  *Id*., 78-79.   No malfunction was found when the gun was tested at the Mississippi Crime Lab following this incident.  *Id*., at 68-69.  As explained by Tom Long, Defendants' expert on police procedures and tactics, an accidental discharge often occurs without an officer knowing he ever pulled the trigger:

> Q.    [I]s there any indication from the depositions you've read, the statements, the investigation, of any intent of Sheriff Waddell to fire his duty weapon in this situation?
>
> A.    Absolutely not. I have seen nothing that would lead me to believe he intended to fire his weapon.
>
> Q.    What are the circumstances in which an officer would accidentally fire his weapon in a situation like this?
>
> A.    Tragically, you know, officers -- it can have a lot to do with -- there's a lot of research out there that we study. Force Science Institute is an excellent example.
>
> THE COURT REPORTER: Excuse me?
>
> THE WITNESS: Force Science Institute is an excellent example of trying to explain how these accidental discharges happen. In training we're always looking for reasons. It has to do a lot of times, it can be physical, sympathetic reflex, one hand squeezes, the other hand subconsciously closes. [There] are a lot of aspects of it that we study

all the time in training.

> Q. In any of those studies that you've looked at or in your experience, when you've had these accidental discharges and sympathetic reflex or for any other reason, how often is the officer who accidentally fired his weapon has he thought that the trigger, the finger was not on the trigger?

> A. The majority of times. They demonstrated on video by putting the officers in scenarios and telling them, you know, do not put your finger on the trigger until you get ready to fire and have filmed officers who denied later that they had ever touched the trigger, yet the proof was there that they had subconsciously [done so].

*See* Long Dep., at 41:23-43:9.

Plaintiff has testified that he has no reason to believe that Sheriff Waddell intentionally fired his weapon or intended to shoot him:

> Q. Do you know why the gun went off?

> A. I do not.

> **Q. And you don't have any reason to think that the sheriff shot you on purpose, do you?**

> **A. No, sir.**

> **Q. As far as you know, it was just an accident?**

> **A. Yes, sir.**

*See* McCarthy Dep., at 56:10-16.

Plaintiff has failed to present any evidence whatsoever that Sheriff Waddell intended to fire his service weapon or shoot Plaintiff.

## LAW AND ARGUMENT

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  A dispute must be genuine and the facts must be material." *Professional Managers, Inc. v. Fawer, Bryan, Hardy and Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  The moving party has a duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on the motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).

Once a properly supported motion for summary judgment is presented, the non-moving party must rebut with "significant probative evidence." *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1977).  In other words, "The non-moving litigant is required to bring forth significant probative evidence demonstrating the existence of a triable issue of fact." *In re: Municipal Bond Reporting Anti-Trust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).

To defend against a proper summary judgment motion, one may not rely on mere denial of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  A non-moving party's response, by affidavit or otherwise admissible evidence, must set forth specific facts showing that as to the matter at hand there is a genuine issue of material fact for trial. *Woods*, 687 F.2d at 119.

**B.**     **Sheriff Waddell is entitled to qualified immunity from Plaintiff's Fourth Amendment claims against him regarding the accidental discharge of his service weapon**

**1.**     **Qualified Immunity Standard**

Qualified immunity is a shield from individual liability for "government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hamptom v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). In the summary-judgment posture the Court "looks to the evidence before it (in the light most favorable to the plaintiff)." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the Court must determine "whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id.* (citations omitted). Whether the official acted with objective reasonableness is an issue of law reserved for the Court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In particular, *Pearson* observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237.

2.    **Plaintiff has failed to establish a constitutional violation by Sheriff Waddell under the Fourth Amendment**

The Court previously held that it was objectively reasonable for Sheriff Waddell to approach the stolen vehicle with an unholstered gun once the vehicle came to a stop. This is due to the fact that neither Petty nor McCarthy had been subdued or restrained, they had fled law enforcement in an erratic and dangerous manner, and it was unknown whether they had access to any weapons inside the vehicle or would continue to resist apprehension. It was reasonable for Sheriff Waddell to be prepared to defend himself, if necessary, until the suspects were subdued. As such, the only

remaining claim against Sheriff Waddell under the Fourth Amendment is Plaintiff's claim that Waddell used excessive force by shooting him.[3]

The Supreme Court and the Fifth Circuit have long held that "Fourth Amendment violations occur only through <u>intentional</u> conduct. *Watson v. Bryant*, 532 Fed. Appx. 453, 457 (5th Cir. 2013), citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (Successful Fourth Amendment claims establish "a governmental termination of freedom of movement *through means intentionally applied*."); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) ("The constitutional right to be free from unreasonable seizure has never been equated by the [Supreme] Court with the right to be free from a negligently executed stop or arrest. There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation."). *See also Dodd v. Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987) (concluding that there was no Fourth Amendment violation where the district court found that the police officer's act of pulling a gun was reasonable; it was undisputed that police officer drew his gun as he knelt over the suspected burglar while attempting to handcuff him; it was undisputed the officer accidentally shot the suspected burglar when, as the suspect reached for the gun, the officer instinctively reacted by pulling his hand and the gun away, thus causing the gun to fire).

In the absence of any evidence showing that Sheriff Waddell intended to use force against Plaintiff by firing his service weapon, the accidental shooting fails to constitute a violation of Plaintiff's Fourth Amendment rights. *Watson*, 532 Fed. Appx. at 457, citing *Baskin v. City of Houston, Miss.*, 378 F. App'x 417, 418 (5th Cir. 2010) (no constitutional violation where shooting

---

[3]  Plaintiff does not argue that Sheriff Waddell or other officers were without probable cause to seize and arrest him. This is not surprising given that Plaintiff ultimately pled guilty to the felony taking of a motor vehicle.

during scuffle with suspect was accidental); *McCoy v. City of Monticello*, 342 F.3d 842, 847-49 (8th Cir. 2003) (reversing district court's denial of qualified immunity where unarmed suspect, who was attempting to surrender, sustained a gunshot wound after officer slipped on ice); *Pleasant v. Zamieski*, 895 F.2d 272, 276-77 (6th Cir. 1990) (accidental shooting did not violate the Fourth Amendment); *Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987) (reh'g op.) (same; shooting was a "pure accident"); *Leber v. Smith*, 773 F.2d 101, 104-05 (6th Cir. 1985) (holding that plaintiff's unreasonable-seizure claim failed as a matter of law in an accidental shooting case and, therefore, declining to reach qualified immunity); *Wilson v. Beebe*, 770 F.2d 578, 584-86 (6th Cir. 1985) (en banc) (holding that due-process was not violated where officer's pistol accidentally discharged as he handcuffed a suspect, and suggesting that an unraised Fourth Amendment claim would have failed).

Plaintiff has failed to present any evidence whatsoever that Sheriff Waddell intended to fire his service weapon, much less shoot Plaintiff. There is no evidence Sheriff Waddell ever threatened to shoot Plaintiff prior to the gun going off. Although Plaintiff testified that he heard officers yelling as they approached the stolen vehicle, Plaintiff admitted he could not understand what they were saying because he was still "shaken up" from the crash (officers were yelling for the suspects to put their hands in the air). Additionally, although Plaintiff saw Sheriff Waddell approach the passenger door, he never saw Waddell's gun and never heard the gunshot. There is no evidence that Sheriff Waddell pointed his weapon at Plaintiff as he reached into the vehicle to attempt to subdue Plaintiff, who was not yet restrained or in custody. Sheriff Waddell heard what sounded like a gunshot as he reached into the vehicle but did not realize it was his weapon that had fired. As described by both Sheriff Waddell and each of the other officers at the scene, Sheriff Waddell's immediate reaction

was "Who shot?" Sheriff Waddell also testified that he thought his hand was *off* the trigger as he reached in to grab hold of Plaintiff.

During his deposition, Plaintiff confirmed that after the shot went off, the sheriff and other officers appeared to be confused as to whose gun had fired and whether anyone had been hit. Plaintiff testified it took several minutes for officers to realize that he had been struck, and he claims he was unable to communicate that fact to them. Plaintiff's testimony in that regard is perfectly consistent with that of Sheriff Waddell and the other officers who were present, and their reaction can only be explained by the fact that the shooting of Plaintiff was wholly unintentional and accidental.

In its prior Order, the Court held there was a question of fact "as to whether Waddell's gun accidentally discharged or whether he intentionally pulled the trigger," based on (1) the fact that testing of the gun showed it did not malfunction and (2) Sheriff Waddell's lack of an explanation for why the gun fired, thus precluding summary judgment at that time. *See* [Doc. 23]. However, neither of these facts indicate Sheriff Waddell <u>intended</u> to pull the trigger; they only imply that the trigger was pulled and that neither Sheriff Waddell nor MBI investigators have any explanation for why that occurred. Defendants' police procedures and tactics expert, Tom Long, found no evidence that Sheriff Waddell intended to fire his weapon, and Long testified that accidental discharges often occur without the officer even realizing his finger was on the trigger, due to factors such as sympathetic reflex (when one hand squeezes, the other hand also squeezes).

The pertinent question for Fourth Amendment analysis in this case is *not* simply whether Sheriff Waddell pulled the trigger, as the Court previously implied; it is whether he did so *intentionally*.

In its prior Order, the Court cited but did not discuss a district court opinion from another jurisdiction where an officer was denied qualified immunity because there was a question of fact as to whether he intentionally fired his weapon at a suspect. *See Santibanes v. City of Tomball, Tex.*, 654 F. Supp. 2d 593, 604-605 (S.D. Tex. 2009). In *Santibanes*, the officer's statements regarding the events leading up to the shooting and how the shooting occurred were inconsistent and did not match what was shown on his patrol car's dashboard video. There was also evidence that the officer had pointed his weapon directly at the suspect who ended up getting shot, and that the weapon fired before the officer's patrol car ever came to a stop. The suspects also had complied with the officer's show of authority by pulling over without demonstrating any dangerous propensities. There was no evidence that the shooting was unintentional other than the officer's own statement. In the present action, Sheriff Waddell has been nothing but consistent in his version of how the accidental shooting occurred, as indicated in his interview with MBI investigators [Doc. 11-1], his written report following the incident [Doc. 22-7], his affidavit [Doc. 11-3, and his subsequent deposition testimony [Doc. 22-1]. Also, unlike *Santibanes*, Sheriff Waddell's testimony that he initially had no idea where the gunshot originated or whether anyone had been shot has been corroborated by each of the other officers who were on the scene, as well as Plaintiff. Additionally, there is no evidence that Sheriff Waddell ever pointed his weapon at Plaintiff prior to the accidental discharge.

In *Watson v. Bryant*, 532 Fed. Appx. 453 (5th Cir. 2013), an officer's service weapon fired as he was attempting to handcuff a suspect with the same hand in which he was holding his loaded service weapon, resulting in fatal injuries to the suspect. The Fifth Circuit held that in the absence of any evidence that the officer intended to use deadly force, the accidental or negligent shooting itself did not violate the suspect's Fourth Amendment rights. *Id.*, at 457. The court further held that

it was objectively reasonable for the officer to attempt to restrain the suspect without first reholstering his firearm since the suspect had shown violent propensities, was not yet subdued, and may have had a hidden weapon in his pockets – even if the officer did not follow "best practices" in attempting to apprehend the suspect. *Id.*, at 458. Accordingly, the officer was entitled to qualified immunity from Plaintiff's constitutional claims against him. *Id.* The same reasoning is applicable here, as there is no evidence that Sheriff Waddell intended to use deadly force against Plaintiff, and since the accidental shooting occurred as Sheriff Waddell was attempting to restrain a potentially armed suspect.

Plaintiff has conceded that as far as he knows, the shooting was simply an accident. *See* McCarthy Dep., at 56:10-16. He testified he has no reason to believe Sheriff Waddell shot him on purpose. *Id.* Sheriff Waddell has likewise testified he never had any such intention, and his testimony in that regard is supported by the testimony of the other officers present at the time. Any argument otherwise lacks evidentiary support, would constitute nothing more than conclusory and speculative allegations, and is insufficient to defeat summary judgment. *See Watson*, 532 Fed. Appx. at 456, citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (in responding to summary judgment premised on qualified immunity plaintiff "must offer more than 'mere allegations.'").

Because there is no evidence that Sheriff Waddell <u>intended to pull the trigger and shoot Plaintiff</u>, Plaintiff cannot establish that Sheriff Waddell violated his constitutional rights under the Fourth Amendment. Because Plaintiff cannot demonstrate a constitutional violation, Sheriff Waddell is entitled to qualified immunity as to Plaintiff's remaining claim against him regarding the shooting incident.

**C.     Plaintiff has failed to establish a constitutional claim against Neshoba County**

Municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). A municipality may not be held liable under Section 1983 on the basis of *respondeat superior*. *Piotrowski*, 237 F.3d at 578.

Not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Piotrowski*, 237 F.3d at 580. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Id.*

In this case, Plaintiff's constitutional claims against Neshoba County fail because he has not established that his Fourth Amendment rights were violated. The Court has previously held that it was objectively reasonable for officers to force the stolen vehicle occupied by Plaintiff and Petty off the roadway due to the risk of serious injury they posed to other motorists. There also is no evidence whatsoever that Sheriff Waddell intentionally fired his service weapon while attempting to subdue and apprehend Plaintiff after the stolen vehicle crashed. Because Plaintiff has failed to establish a triable issue of fact as to any constitutional violation, he cannot satisfy this threshold element of his constitutional claim against Neshoba County.

Additionally, Neshoba County had adequate policies and procedures in place regarding the use of force. *See* Neshoba County Policies and Procedures, Use of Force, Exh. "G." Police

procedures and tactics expert Tom Long has opined that these policies are standard for the industry and are reasonable. *See* Exh. "F," Expert Report. There also is no evidence that any of these policies were violated during the apprehension of Plaintiff, which unfortunately resulted in the accidental shooting in question. *See* Exh. "F," at 46.

While Plaintiff may attempt to argue that Neshoba County had a policy or custom of using excessive force based strictly on the fact that it was the sheriff who was involved in the subject shooting incident, this is without merit since there is no evidence that Sheriff Waddell ever intended to apply force using his service weapon. As discussed *supra*, force cannot be considered excessive where the application of force was unintended and accidental.

Further, to prevail on a "failure to train theory" against a municipality, a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). When a plaintiff seeks to impose Section 1983 liability on a municipality for its failure to train its employees, normal tort standards are replaced with heightened standards of culpability and causation. *Williams v. City of Cleveland*, 2012 U.S. Dist. LEXIS 117559, 53-54 (N.D. Miss. Aug. 21, 2012).

Claims of inadequate training generally require that the plaintiff demonstrate a pattern of constitutional violations. *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 n. 34 (5th Cir. 2005) (citation omitted); *see also Lewis v. Pugh*, 289 F. App'x 767, 772 (5th Cir. 2008) (citing Thompson v. Upshur County, 245 F.3d 447, 458 (5th Cir. 2001) ("Proof of more than a single instance . . . is required before such a lack of training can constitute deliberate indifference."); *Snyder v. Trepagnier*,

-17-

142 F.3d 791, 798 (5th Cir. 1998) ("[P]roof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training."). Plaintiff must "demonstrate that the municipality or supervisor had notice of a pattern of prior acts fairly similar to what ultimately transpired." *Lewis*, 289 F. App'x at 772 (internal citations omitted).

"[The Fifth Circuit] consider[s] compliance with state requirements as a factor counseling against a 'failure to train' finding." *Williams v. City of Cleveland*, 2012 U.S. Dist. LEXIS 117559, 58, citing *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). *See also Conner v. Travis Cnty.*, 209 F.3d 794, 798 (5th Cir. 2000). Likewise, the Fifth Circuit has explained that when officers have received training as required by state law, the plaintiff must show that the legal minimum of training was inadequate. *See Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). Such evidence has not been presented in this case.

Here, there is no evidence that inadequate training caused a constitutional deprivation. Further, Sheriff Waddell had been trained according to state standards through the Mississippi Law Enforcement Officers Training Academy and was a certified police officer by the State of Mississippi. *See* Waddell Dep., at 7. Additionally, although Sheriff Waddell had been in his current position as sheriff for just over a month when the subject incident occurred, he had previously had more than twenty-five years of experience as a law enforcement officer, including fourteen years as a patrol officer with the Philadelphia Police Department. *Id.*, at 6. Finally, there is no evidence of any other instances where a Neshoba County officer accidentally fired his weapon while attempting to restrain or subdue a suspect.

For all of the foregoing reasons, Plaintiff has failed to establish a genuine issue of material fact as to his constitutional claims against Neshoba County, and his claims against the County should

be dismissed as a matter of law.

    **D.**    **Neshoba County has immunity from Plaintiff's state law claims under Miss. Code Ann. § 11-46-9(1)(c) for its police protection activities**

Plaintiff's only claim under state law arises out of the shooting incident that occurred as Sheriff Waddell was attempting to take Plaintiff into custody after the stolen vehicle in which he was a passenger came to a stop. Plaintiff has not asserted any claims under state law regarding Sheriff Waddell's decision to order deputies to force the stolen vehicle off the roadway.

The Mississippi Tort Claims Act (MTCA) is the exclusive route for filing suit against a governmental entity and its employees in Mississippi. *Jackson v. Sutton*, 797 So. 2d 977 (Miss. 2001), citing *L.W. v. McComb Separate Mun. School Dist.*, 754 So. 2d 1136, 1146 (Miss. 1999)). Neshoba County, Mississippi, constitutes a "governmental entity" and a "political subdivision" as defined by statute. MISS. CODE ANN. § 11-46-1.

Under the MTCA, a state governmental entity and its employees shall not be liable for any claim while acting within the course and scope of their employment under certain circumstances. MISS. CODE ANN. § 11-46-9(1). The exception to liability applicable to these Defendants states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

MISS. CODE ANN. § 11-46-9(1)(c). This statute is "designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties." *City of Jackson v. Powell*, 917 So. 2d

-19-

59, 70 (Miss. 2005).

It is undisputed that Tommy Waddell at all relevant times was engaged in the course and scope of his duties as the sheriff of Neshoba County. *See* Complaint, Doc. [1], at ¶ 2. It also is undisputed that at the time Sheriff Waddell's firearm accidentally discharged, he was attempting to take Plaintiff into custody after Plaintiff and Petty had stolen a vehicle and fled from law enforcement officers, and, therefore, was engaged in "police protection" at the time of the subject incident. As such, Sheriff Waddell and Neshoba County have two avenues of immunity from Plaintiff's claims against them: (1) if Plaintiff was engaged in criminal activity, then Defendants are immune, and (2) if Plaintiff was not engaged in criminal activity, and if Sheriff Waddell did not act with reckless disregard, then Defendants are immune. *McCoy v. City of Florence*, 949 So. 2d 69, 77-78 (Miss. Ct. App. 2006), citing *Estate of Williams v. City of Jackson*, 844 So. 2d 1161, 1164 (Miss. 2003). Both avenues of immunity are applicable here.

1.    **Neshoba County has immunity from Plaintiff's state law claims due to Plaintiff's criminal activity**

For recovery from a governmental entity to be barred under MISS. CODE ANN. § 11-46-9(1)(c) because of the victim's criminal activity, "the criminal activity has to have some causal nexus to the wrongdoing of the alleged tortfeasor." *Estate of Williams vs. City of Jackson*, 844 So. 2d 1161, 1165 (Miss. 2003) (summary judgment affirmed where decedent was intoxicated when he pulled out in front of speeding fire truck). *See also McCoy v. City of Florence*, 949 So. 2d 69, 86 (Miss. App. 2006) (summary judgment affirmed where two passengers were killed in an accident during a police pursuit; though not driving, the passengers encouraging the driver to flee was criminal activity that had a causal nexus to their injuries); *Giles v. Brown*, 962 So. 2d 612, 615-616 (Miss. App. 2006)

(summary judgment affirmed as to operator of ATV unlawfully driving on highway since his illegal activity had a causal nexus to his injuries). Although the criminal activity supporting immunity must be "more than fortuitous," it has never been held that such activity must rise to the level of a felony. *Williams*, 844 So. 2d at 1164-65.

It is undisputed that Plaintiff was engaged in criminal activity at the time of the subject incident, as evidenced by him pleading guilty to the felony offense of taking away a motor vehicle. Fleeing law enforcement officers also constitutes a criminal offense. *See* MISS. CODE ANN. § 97-9-73. Although the stolen vehicle had come to a stop after being pushed off the roadway by sheriff's deputies, neither Plaintiff nor his accomplice had been subdued or restrained at the time Sheriff Waddell's service weapon accidentally discharged. When Sheriff Waddell and other officers approached the stolen vehicle, the information they had at the time was that the suspects had been accused of breaking and entering a residence, had stolen a vehicle, had fled from law enforcement officers, had driven at high speeds without headlights or a right front tire, had nearly collided with oncoming traffic, and had rammed a patrol car during the pursuit. Whether the suspects were armed or would could continue their attempt to flee was unknown. Sheriff Waddell's service weapon accidentally discharged as he was reaching into the stolen vehicle to attempt to apprehend Plaintiff, who was in the passenger seat unrestrained. At that time, Plaintiff had not yet been subdued, restrained, or taken into custody, and he still posed a serious risk to the safety of the officers and others – even if he did have his hands up (which is denied).

As such, Plaintiff's criminal actions of stealing a vehicle from Linda Sanders' residence had a direct causal nexus to his injuries. If Plaintiff and Petty had not stolen Sanders' vehicle, officers would not have been attempting to apprehend them and take them into custody. "Where an officer

has probable cause to arrest and proceeds to do so, there is the requisite nexus between criminal activity and the action causing injury." *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001) (affirming summary judgment where plaintiff claimed officer broke his arm and tore his rotator cuff while attempting to arrest him for public drunkenness; plaintiff also was convicted of resisting arrest). This was not a situation where Plaintiff was injured after already being subdued and handcuffed. *See, e.g.,City of Jackson v. Powell*, 917 So. 3d 59, 70 (criminal activity immunity did not apply where plaintiff was beaten by officers after he had already been handcuffed). Here, Plaintiff's criminal activity had not ceased just because the stolen vehicle had come to a stop.

Because the undisputed evidence establishes that McCarthy was engaged in criminal activity that had some causal nexus to his injuries, Plaintiff cannot escape the immunity provided to Sheriff Waddell and Neshoba County under § 11-46-9(1)(c).

Additionally, where these Defendants have immunity under § 11-46-9(1)(c) due to Plaintiff's criminal activity at the time of the subject incident, they do not have to establish the absence of reckless disregard. *Williams*, 844 So. 2d at 1166. As held by the Mississippi Supreme Court, if a defendant were required to do so, it would remove the statutory requirement that an individual bringing suit against a law enforcement officer not be involved in criminal activity at the time of his injury. *Id.* (citing *Tory v. City of Edwards*, 829 So. 2d 1246, 1249-50 (Miss. App. 2002) (because of plaintiff's refusal to pull over, efforts to run officers off the road, and reckless driving constituted "criminal activity," even reckless disregard for his safety by the pursuing officers cannot be basis for liability).

Based on the foregoing, there are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law as to Plaintiff's state law claims against them under Section

11-46-9(1)(c).

**2.** **Even if Plaintiff had not been engaged in criminal activity at the time of the subject incident, Neshoba County would still have immunity because the actions of Sheriff Waddell did not constitute reckless disregard**

Even if the Court determines that Plaintiff's claims are not barred due to Plaintiff's criminal activity, Neshoba County still has immunity under § 11-46-9(1)(c) because the actions of Sheriff Waddell did not constitute "reckless disregard for the safety and well-being of others not engaged in criminal activity." Law enforcement officers "are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence." *Maldonado v. Kelly*, 768 So. 2d 906, 909 (Miss. 2000). Those engaged in police protection will only be held liable for their reckless acts. *Id.* Although "reckless disregard" has not been defined by statute, the Mississippi Supreme Court has described it as follows:

> 'Disregard' of the safety of others is at least negligence if not gross negligence. Because 'reckless' precedes 'disregard,' the standard is elevated. As quoted above from Black's Law Dictionary, 'reckless,' according to the circumstances, 'may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive or negligence.' In the context of the statute, reckless must connote 'wanton or willful,' because immunity lies for negligence. And this Court has held that 'wanton' and 'reckless disregard' are just a step below specific intent.

*Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999).

"Reckless disregard" has further been defined in this context as "the voluntary doing by a motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an <u>entire abandonment of any care</u>, and <u>heedless indifference</u> to results which may follow and the <u>reckless taking of chance</u> of an accident happening without intent that any occur." *Rayner v. Pennington*, 25

So. 3d 305, 309 (Miss. 2010) (citing *Turner*, 735 So. 2d at 229) (emphasis added). "By requiring a finding of 'reckless disregard of the safety and well-being of others,' the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties." *City of Jackson v. Presley*, 40 So. 3d 520, 523 (Miss. 2010).

Mississippi courts find "reckless disregard" only when there is an obvious and complete absence of any care, a complete failure to exercise safety precautions, and a total disregard for a high probability that an accident will occur. *See, e.g., City of Jackson v. Harrison*, 2010 Miss. LEXIS 393 (Miss. 2010) (finding "reckless disregard" when on-duty officer, responding to a non-emergency call late at night, drove approximately 98 miles per hour through a red light without emergency lights or siren activated and collided with the plaintiff, who was attempting to make a lawful left turn in the intersection; officer also pled guilty to culpable manslaughter).

In the present action, the Court has held that it was objectively reasonable for Sheriff Waddell to approach the stolen vehicle with his service weapon drawn. *See* Order, [Doc. 23]. Neither Plaintiff nor Petty, who was laying across the front seat with his hands near the floorboard when officers reached the vehicle, had been subdued or restrained at the time. Sheriff Waddell and the other officers on the scene had no way to know whether Plaintiff or Petty had access to a weapon on their person or inside the vehicle. Because Plaintiff was not yet restrained and was in an non-secure environment, Plaintiff still posed a serious risk to the safety of the officers and others. Further, Sheriff Waddell testified that he believed he had his finger off the trigger of his service weapon when he reached into the vehicle to gain control of Plaintiff. There also is no evidence that Sheriff Waddell had his weapon pointed directly at Plaintiff when he reached into the vehicle.

The Court has correctly held that Sheriff Waddell's actions were objectively reasonable. There certainly is no evidence that he acted in a manner demonstrating an entire abandonment of any care, with heedless indifference, or with a total disregard for a high probability that an accident would occur. Even if the accidental shooting was caused by Sheriff Waddell's negligence in handling his service weapon, negligence is insufficient to overcome the immunity provided under Section 11-46-9(1)(c).

Accordingly, there are no genuine issues of material fact regarding Neshoba County's entitlement to immunity under the MTCA, and Plaintiff's state law claims against it should be dismissed as a matter of law.

## CONCLUSION

Sheriff Tommy Waddell is entitled to qualified immunity as to Plaintiff's claims against him under the Fourth Amendment, as there is no evidence that Sheriff Waddell intended to fire his service weapon or shoot Plaintiff. Further, Plaintiff has failed to establish a constitutional claim against Neshoba County. Additionally, Neshoba County is entitled to immunity from Plaintiff's state law claims against it under MISS. CODE ANN. § 11-46-9(1)(c). Accordingly, there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law as to each of Plaintiff's claims against them.

Respectfully submitted, this the 9th day of April, 2015.

NESHOBA COUNTY, MISSISSIPPI, AND
SHERIFF TOMMY WADDELL, DEFENDANTS

BY: */s/   Steven J. Griffin*
         OF COUNSEL

ROY A. SMITH, JR. - BAR # 7599
rsmith@danielcoker.com
STEVEN J. GRIFFIN - BAR # 103218
sgriffin@danielcoker.com
DANIEL, COKER, HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MISSISSIPPI  39215-1084
TELEPHONE:  (601) 969-7607
FACSIMILE:  (601) 969-1116

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2015, I electronically filed the foregoing with the Clerk of

the Court using the ECF system, which sent notification of such filing to the following:

Charles R. Mullins, Esq.
chuckm@coxwelllaw.com

**Attorney for Plaintiff**

/s/  Steven J. Griffin